# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANETTA FRENCH, ) | |
| ) | |
| Plaintiff, ) | No. 15 C 5475 |
| ) | |
| v. ) | Magistrate Judge M. David Weisman |
| ) | |
| NANCY A. BERRYHILL,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janetta French brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying her application for disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## Background

Plaintiff applied for disability benefits and supplemental security income in March and April 2012, respectively, alleging a disability onset date of November 23, 2011. (R. 12, 220.) The application was initially denied on August 23, 2012, and again on reconsideration on January 13, 2013. (R. 103, 143-50.) Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on January 9, 2014. (R. 35-80.) On January 30, 2014, the ALJ denied plaintiff's applications and found her not disabled under the Social Security Act. (R. 12-23.)

---

[1]On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited June 1, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

The Appeals Council denied plaintiff's request for review on April 24, 2015. (R. 1-4), making the ALJ's decision the final decision of the Commissioner, reviewable by this Court under 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether she is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden

is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (R. 14.) At step two, the ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the cervical and lumbar spine with radiculopathy, status post cervical and lumbar surgery, asthma and osteoarthritis of the hips." (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. 15.) At step four, the ALJ found that plaintiff could not perform her past relevant work, but had the RFC:

> [T]o perform light work . . . except [that she] can never climb ladders, ropes or scaffolds and only occasionally climb ramps or stairs . . . . [,] can occasionally bend, kneel, stoop, crouch, crawl or balance. . . . [,] can occasionally perform tasks involving fine and gross manipulation with her upper extremities bilaterally . . . . [,] must avoid concentrated exposure to pulmonary irritants and extreme cold . . . . [, and] must avoid concentrated exposure to workplace hazards including dangerous moving machinery and unprotected heights.

(R. 15, 21.) At step five, the ALJ found that jobs exist in significant numbers in the economy that plaintiff can perform, and thus she is not disabled. (R. 22-23.)

Plaintiff contends that the ALJ erred by giving little weight to the opinion of her treating physicians, Drs. Brandon and Kazmar, who said that plaintiff could only sit, stand, or walk for one hour out of an eight-hour workday, could only occasionally lift five to ten pounds, and was limited in her ability to use her hands and to reach with her arms. (R. 360-64, 634-40.) A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R § 404.1527(c)(2). The ALJ said that was not the case because: (1) the doctors' "treatment notes and the medical record as a whole do not

3

support" their opinions; (2) their "treatment notes contain few if any clinical examination findings" and are based primarily on plaintiff's complaints of pain; and (3) their view that plaintiff has a limited ability to reach, sit, stand, and walk is contradicted by the consultative examiner's findings and imaging of plaintiff's shoulders. (R. 19-20.)

The record supports the ALJ's determination. Plaintiff's medical records show that she frequently complained of pain in her back, knees, hips, and hands, but repeated imaging studies failed to reveal any acute problems. (*See, e.g.*, R. 375 ("Films show mild DJD [degenerative joint disease] R Knee" and "DJD in back"); R. 376 ("X-rays [do not show] significant pathology" in the hip); R. 381 ("[N]o acute fracture or subluxation . . . . [,] no abnormal motion on flexion or extension views" in cervical spine); R. 382 (x-rays of lumbarsacral spine show "[m]ild multilevel degenerative change slightly progressed since 2009"); R. 383 & 438 (MRI showed "[u]nremarkable left hip"); R. 384 & 439 (MRI of right knee showed "[m]ild tricompartmental degenerative change" and "[m]ild nonspecific bone marrow edema"); R. 397 & 423 (x-ray of hands showed "[m]inimal degenerative changes"); R. 400-01 (statement of Dr. Luken, plaintiff's treating neurologist, that, given the negative results of the imaging studies, "the explanation for [plaintiff's] very troublesome pain is not at all obvious to me"); R. 403 (disability insurance form completed by Dr. Brandon that says plaintiff is limited in her ability to walk, sit, stand, reach, grasp, lift, push, and pull, an "assessment . . . [that] is based on . . . [the] patient's report"); R. 424 (x-ray of right wrist showed "no acute osseous finding"); R. 425 (x-ray of left foot and ankle showed "no acute fracture or subluxation"); R. 428 (x-ray of both hips showed "[m]ild to moderate bilateral hip degenerative change, right greater than left"); R. 430 (x-ray of knees showed "[m]ild medial and lateral femoral tibial joint space narrowing, not significantly changed from 2010"); R. 433 (report of x-ray of shoulders stating, "No acute

findings seen"); R. 434 (MRI of upper extremity joint showed that "[t]here are very mild changes of chronic tendinosis in the lateral aspect of the supraspinatus and degenerative changes at the acromioclavicular joint"). Thus, aside from plaintiff's subjective complaints, there is little support in the record for the functional limitations Drs. Brandon and Kazmar ascribe to her. As a result, the ALJ's refusal to give controlling weight to the opinions of Drs. Brandon and Kazmar was not error.

Even if that is true, plaintiff contends that the ALJ's assessment of the doctors' opinions was erroneous because the ALJ did not consider all of the regulatory factors. *See* 20 C.F.R § 404.1527(c) (stating that, in assessing a medical opinion, an ALJ considers whether the doctor examined the plaintiff; whether the doctor is a specialist; the nature, extent and length of the treatment relationship, if any, between the doctor and the plaintiff; whether the opinion is supported by objective evidence and is consistent with the record as a whole, and any other factors that "tend to support or contradict the opinion"). The Court disagrees. The ALJ acknowledged that Drs. Brandon and Kazmar examined plaintiff and treated her over a period of time. (R. 19-20.) But the ALJ stressed that their opinions of plaintiff's limitations were not supported by their own records, the records of plaintiff's treating neurologist Dr. Luken, or the opinions of the agency doctors and independent medical examiner. (*See id.*) Thus, the ALJ's assessment of the medical evidence was not erroneous.

Plaintiff also contends that the ALJ improperly assessed her credibility. The Court notes that defendant recently issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminate[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Though SSR 16-3p was issued after the ALJ's

5

decision in this case, it is appropriate to apply it here because: (1) the new regulation is a clarification of, not a change to, existing law, *see Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) (stating that clarifying rules can be applied retroactively, and courts give "great weight" to an agency's expressed intent to clarify a regulation), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); and (2) it is substantially the same as the prior regulation, *compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Under either regulation, the ALJ "is in the best position to determine the credibility of witnesses." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Thus, the Court will "overturn a credibility determination only if it is patently wrong" *id.*, that is, it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (quotations omitted).

In evaluating symptoms, the ALJ considers:

1. [The claimant's] [d]aily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms . . . ; and 7. Any other factors concerning [the] individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7. With respect to these factors, the ALJ said:

. . . . The claimant testified that her spinal impairments and hip impairment prevented her from standing, walking or sitting for more than a short period at one time. However, her consultative exam indicated that she had five out of five strength in all of her extremities and walked unassisted with a normal gait. The claimant also testified that her low back pain radiated down her legs, but her straight leg raise testing during her consultative exam was negative and the imaging of the claimant's lumbar spine showed no nerve root compression or significant central canal stenosis as late as August 2012. . . . In addition, while the claimant testified to constant pain in her neck and lower back, her treating neurosurgeon, Dr. Luken, indicated that there was no change in the claimant's clinical findings in late 2012 from his earlier exams. Dr. Luken's earlier

> treatment notes in 2012, shortly after the claimant's cervical fusion, indicated the claimant reported that she had substantial relief of her neck, shoulder and arm pain and imaging showed a "flawless and mobile arthroplasty at the intended C4-C5 interspace." The claimant also testified that she was unable to use her hands to button, zip or hold more than a gallon of milk . . . . [, yet] imaging of her hands and right wrist taken only months prior to the exam showed no more than minimal degenerative changes. In addition, while the claimant testified that she had difficulty using her hands, she was able to complete a twelve page handwritten function report in May 20, 2012. While the claimant reported that shoulder pain with extension or rotation limited her ability to care for her hair, her consultative exam showed a normal range of motion in her cervical spine, shoulders, elbows and wrists. The claimant also testified that her impairments prevented her from socializing. However, in her function report, she indicated that she socialized with others several times a week. I find the claimant's statements do not support any additional limitations in her [RFC].

(R. 21) (citations omitted). That analysis is sufficient to withstand deferential review. *See Smith v. Colvin*, No. 1:14-CV-01147-JMS-DK, 2015 WL 2338741, at *8 (S.D. Ind. May 15, 2015) ("The ALJ is not required to address every factor or every piece of evidence in his decision, but must support his credibility determination with substantial evidence and must 'explain h[is] decision in such a way that allows [the Court] to determine whether []he reached h[is] decision in a rational manner, logically based on h[is] specific findings and the evidence in the record.'") (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

In short, the ALJ thoroughly reviewed the evidence in the record and did not engage in the kind of "cherry-picking" condemned by the Seventh Circuit. *See, e.g., Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ simply "did not assign the significance to [the evidence] that [plaintiff] prefers." *Id.* That is not a basis for reversal.

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision, denies plaintiff's motion for summary judgment [16], and terminates this case.

**SO ORDERED.**                **ENTERED:**   **June 1, 2017**

**M. David Weisman**
**United States Magistrate Judge**